**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RENE EDWARDS, | : | |
| | : | |
| Petitioner, | : | Civil No. 13-6523 (PGS) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| STATE OF NEW JERSEY, et al., | : | |
| | : | |
| Respondents. | : | |

**SHERIDAN, DISTRICT JUDGE**

Petitioner Rene Edwards ("Petitioner"), a prisoner confined at New Jersey State Prison in Trenton, New Jersey at the time of filing, has submitted an Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (ECF No. 3.)  For the reasons stated herein, the Amended Petition will be denied.

**I. BACKGROUND**

This Court, affording the state court's factual determinations the appropriate deference, *see* 28 U.S.C. § 2254(e)(1)[1], will recount salient portions of the recitation of facts as set forth by New Jersey Superior Court, Appellate Division:

> On November 29, 2006, at approximately 6:30 p.m., Laura Schreck, a sergeant with the New Jersey Division of Parole, and two other parole officers, Paul Kapp and Scott Allen, were outside the probation building on North 5th Street in Camden waiting to speak to defendant.  Sergeant Schreck had asked the Camden County Sheriff's Office for assistance, if needed, and officers Eife, Robinson and Murray were on the scene to provide back-up to the parole

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

officers. At the time, Schreck was assigned to "an electronic monitoring unit" that would "supervise offenders that are on the bracelet [while] on parole."

Shreck was dressed in plain clothes, but wore a badge on a lanyard around her neck. Kapp was also in plain clothes, but wore a badge and a police jacket. Eife wore plain clothes, but had his badge on a lanyard over a police vest. Murray was in full uniform.

As defendant left the probation building, he was followed by the sheriff's officers, and Schreck approached defendant, identified herself and asked to speak with him. Defendant at this point raised his arms in the air, and tried to walk past Schreck. She then told defendant to stop and stated he was under arrest. Defendant tried to push past her, and the officers on the scene reacted and tried to get defendant to put his hands behind his back for handcuffing. Defendant then began flailing his arms in resistance.

Schreck and the five other officers brought defendant to the ground in a prone position, employed by officers in response to "extreme resistance." Each officer attempted to control a different part of defendant's body. It took the officers approximately two minutes to subdue the struggling defendant.

During the struggle, Robinson and Murray suffered rotator cuff tears, Schreck was cut and bruised on her hand, and Eife claimed he was bitten by defendant and his hand was splattered by defendant's saliva. Eife sought medical attention and was given medication to address possible HIV exposure.

Defendant did not testify at trial, but did present testimony from a medical expert pertaining to injuries he claimed to have suffered during the event.

*State v. Edwards*, No. A-0284-10T4, 2013 WL 163297 (N.J. Super. Ct. App. Div. 2013).

A Camden County Grand Jury returned an indictment charging Petitioner with second-degree aggravated assault upon Christopher Eife, N.J.S.A 2C:12-l(b) (1) (count one); third-degree aggravated assault upon Larry Robinson, N.J.S.A. 2C:12-l(b)(7) (count two); third-degree subjecting a law enforcement officer, Camden County Sheriff's Officer Eife, to bodily fluid,

N.J.S.A. 2C:12-13 (count three); third-degree resisting arrest by using or threatening physical force, N.J.S.A. 2C:29-2(a) (count four); and third-degree aggravated assault on law enforcement officers Eife "and/or" Sheriff's Officer Robinson "and/or" Sheriff's Officer William Murray, N.J.S.A. 2C:12-1(b) (5) (a) (count five). *Id.* Following a jury trial, Petitioner was acquitted on counts one and three; convicted of the lesser-included offense of simple assault, on count two; convicted on count four; and convicted on count five as it related to Officers Murray and Robinson. *Id.* The court sentenced Petitioner to a five year term of imprisonment, subject to a parole ineligibility period of two and one-half years, on counts four and five, and to a six-month term of imprisonment on the lesser-included disorderly persons offense on count two, all to run concurrently. *Id.* These sentences were to run consecutively to Petitioner's sentence for a violation of probation on an earlier conviction. *Id.*

Petitioner appealed and the Appellate Division affirmed the conviction and sentence. *Id.* The New Jersey Supreme Court denied the petition for certification, *State v. Edwards*, 68 A.3d 890 (N.J. 2013), and the United States Supreme Court denied the petition for writ of certiorari. *State v. Edwards*, 134 S.Ct. 828 (2013). On September 5, 2013, Petitioner filed his original Petition in this case. (ECF No. 1.) Pursuant to various administrative orders from this Court (ECF Nos. 2, 6, 10), Petitioner filed an Amended Petition on December 2, 2013 (ECF No. 3). Thereafter, in April 2014, Petitioner filed a petition for post-conviction relief ("PCR"), which appears to still be pending in state court. (Resp't's Answer, Ex. 13, ECF No. 28-13.)

## II. DISCUSSION

### A. Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

3

28 U.S.C. § 2254 provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> . . .
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding . . . .

28 U.S.C. § 2254.

"§ 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011); *Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014). Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." *Id.*

A federal court's authority to grant habeas relief is further limited when a state court has adjudicated petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d).[2] If a claim has

---

[2] "[A] claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground." *Lewis v. Horn*, 581 F.3d 92, 100 (3d Cir. 2009) (quoting *Thomas v. Horn*, 570 F.3d 105, 117 (3d Cir. 2009)). "Section 2254(d) applies even where there has been a summary denial." *Pinholster*, 131 S.Ct. at 1402. "In these circumstances, [petitioner] can satisfy the 'unreasonable

4

been adjudicated on the merits in state court proceedings, this Court "has no authority to issue the writ of habeas corpus unless the [state court's] decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)). However, when "the state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential standards provided by AEDPA . . . do not apply." *Lewis*, 581 F.3d at 100 (quoting *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001)).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court. *See Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA." *Parker*, 132 S.Ct. at 2155 (quoting 28 U.S.C. § 2254(d)(1)).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the

---

application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the [state court's] decision." *Id.* (quoting *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)); *see also Johnson v. Williams*, 133 S.Ct. 1088 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted").

5

state court applies a rule that "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different result.]" *Williams*, 529 U.S. at 405–06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  However, under § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011) (quoting *Williams,* 529 U.S. at 410).  "If this standard is difficult to meet—and it is—that is because it was meant to be." *Burt v. Titlow*, 134 S.Ct. 10, 16 (2013) (citations and internal quotation marks omitted).  The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits. *Pinholster*, 131 S.Ct. at 1398.

**B. Analysis**

**1. Jury Instructions (Ground One)**

In his first ground for relief, Petitioner argues that the trial court committed reversible error when it instructed the jury that there is "no such animal as simply [sic] assault." (Am. Pet. ¶ 12, Ground One.)  Petitioner raised this claim in his direct appeal, where it was rejected by the Appellate Division:

> In Point I, defendant argues that the trial judge erred in his response to jury questions regarding assault upon a law enforcement officer. These questions were tendered by the jury at the end of the first day of deliberations. The first requested the judge to "explain aggravated assault on a law enforcement official[.]" Responding, the judge explained:

6

> Shorthand is, it's a simple assault plus the fact that the defendant knew or should have known that the person he was assaulting was a law enforcement officer either by what the person said or what he was wearing. And that he was in the enforcement of his law enforcement duties. That's basically what it is, but I'll give you the full one, because I need to give you the full one. I just wanted you to know that much.

The second queried, "[W]hat is the difference between simple assault and aggravated assault against a police officer?" The judge responded:

> There is no such animal as simple assault against a law enforcement officer. The scenario is that if you have simple assault against a law enforcement the law makes it aggravated. All right?
>
> But if you find that there was a simple assault against that person, and that person may actually be a law enforcement officer, but the defendant had no reason to know or believe that he was a law enforcement officer, then it still may be—it still is a simple assault.

After these remarks, the judge promised the jury a "full-blown charge" on Monday, and excused the jury for the weekend, asking them not to "think much about it in the meantime" because they should be "deliberating together."

On the following Monday, the judge explained that he had provided the "shorthand version" previously and would now provide "the full definition." The judge proceeded to read the model charge to the jury again. In pertinent part, the judge told the jury that the State must prove beyond a reasonable doubt that defendant knew that the alleged victim "was a law enforcement officer acting in the performance of his duties," while in uniform, or exhibiting evidence of his authority. Finally, yet again, the judge explained: "it becomes an aggravated assault if you have a simple assault, as I previously defined it for you, plus the State beyond a reasonable doubt proves those other elements regarding the defendant and what he knew about the law enforcement status of ... those individuals."

7

> Defendant argues that the judge erred by suggesting that simple assault against a police officer is unrecognized in our criminal code, and further erred in his clarification of those remarks by misstating the law by which a defendant assaulting a law enforcement officer could be found guilty of simple assault. This claim was not raised before the trial court and thus must be analyzed under the plain error standard, i.e., that the error was "clearly capable of producing an unjust result." R. 2:10–2; *see also State v. Macon*, 57 N.J. 325, 336 (1971). Under that standard, "we must disregard any error unless it is clearly capable of producing an unjust result. Reversal of defendant's conviction is required if there was error sufficient to raise a reasonable doubt as to whether [it] led the jury to a result it otherwise might not have reached." *State v. Atwater*, 400 N.J.Super. 319, 336 (App.Div.2008) (internal citations and quotations omitted); *see also State v. Daniels*, 182 N.J. 80, 95 (2004); *Macon*, supra, 57 N.J. at 333. In the context of jury instructions, plain error is "legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." *State v. Hock*, 54 N.J. 526, 538 (1969), *cert. denied*, 399 U.S. 930, 90 S.Ct. 2254, 26 L. Ed.2d 797 (1970). "In reviewing instructions to the jury, the court must not isolate the language challenged but must examine the remark in the context of the entire charge." *State v. DiFrisco*, 137 N.J. 434, 491 (1994), *cert. denied*, 516 U.S. 1129, 116 S.Ct. 949, 133 L. Ed.2d 873 (1996). "A jury charge must adequately set forth the elements of an offense in a way that explains the law to the jury in an understandable manner." *Ibld.* "The test, therefore, is whether the charge in its entirety was ambiguous or misleading." *State v. Hipplewith*, 33 N.J. 300, 317 (1960). Applying these standards, while the trial judge misstated the law in his initial "shorthand" remarks to the jury at the end of the first day of deliberations, the judge properly explained the law on the next trial day, prior to the jury retiring for continued deliberation. Consequently, while we do not find the judge's initial "shorthand" response to the jury's questions to have been flawless, the error was not "clearly capable of producing an unjust result." R. 2:10–2.

*Edwards*, 2013 WL 163297, at *3-4.

Habeas review of jury instructions is limited to those instances where the instructions

8

violated a defendant's due process rights. *Echols v. Ricci*, 492 F. App'x 301, 312 (3d Cir. 2012) (citing *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991) (holding that "[t]he only question for us is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process")). *See also Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (same). A defendant's due process rights are violated where the instruction "operated to lift the burden of proof on an essential element of an offense as defined by state law." *Echols*, 492 F. App'x at 312 (quoting *Smith v. Horn*, 120 F.3d 400, 416 (3d Cir. 1997)).

An error in the jury instructions is not grounds for habeas relief if the error is harmless. *Pagliaccetti v. Kerestes*, 581 F. App'x 134, 136 (3d Cir. 2014) (citing *Yohn v. Love*, 76 F.3d 508, 522 (3d Cir. 1996)). An error is harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). In determining whether there is harmless error, the court examines the impact of the error on the trial as a whole. *Yohn*, 76 F.3d at 523.

Here, the Appellate Division properly examined the jury instructions and determined that even if the judge had misstated the law in his initial "shorthand" remarks to the jury at the end of the first day of deliberations, the judge properly explained the law on the next trial day, prior to the jury retiring for continued deliberations. Since he clearly corrected any potential error in his "shorthand" instructions with his subsequent detailed instructions, the Appellate Division found that the instructions as a whole were proper. This Court finds that the state court's adjudication of this claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or result in a decision that was based on an unreasonable determination of the facts in light

of the evidence presented in the State court proceeding. Certainly, looking the instructions as a whole, the jury was properly instructed on the elements of the offenses prior to continued deliberations and any potential error in the initial instruction was properly corrected and had no effect on the trial. *See Brecht*, 507 U.S. at 637. (Habeas relief on this ground is denied.

### 2. Evidentiary Issue (Ground Two)

In the second ground of the Petition, Petitioner argues that he was denied his right to a fair trial when a state's witness testified that Petitioner was on parole at the time of the alleged assault, in violation of the New Jersey Rules of Evidence. (Am. Pet. ¶ 12, Ground Two.) Petitioner raised this issue on direct appeal, where it was rejected by the Appellate Division:

> Defendant argues next that testimony by the State's witnesses implied defendant was on parole, and therefore "implied to the jury that defendant had a prior criminal conviction." Defendant asserts that because he did not testify, such evidence was inadmissible. Defendant challenges testimony by the parole officers as to their status as parole officers; testimony by the parole officers regarding their official garb; testimony by a sheriff's officer explaining that he was present to assist the parole division; and testimony establishing that a parole officer informed defendant he was under arrest.
>
> Defendant does not argue that any direct evidence of his probation or parole status was presented at trial, and much of the evidence defendant now challenges was not the subject of objection. The judge ruled in a pre-trial motion that the defendant's prior convictions and "the fact that he was on probation[,] ... should not be discussed by the State's witnesses." At the outset of trial, after Schreck testified that she wanted to speak to defendant about "an issue that involved the Division of Parole [ ]," the trial judge sustained an objection, and informed the jury to disregard that response. Defendant did not object to testimony that Schreck, Kapp and Allen were parole officers and that the sheriff's officers were present to assist the Division of Parole. Such failure to object suggests a lack of prejudice. *See State v. Frost*, 158 N.J. 76, 84 (1999).
>
> We also observe that while defendant stipulated that "the law

10

> enforcement officers ... who ... encountered [defendant] at that time and place ... were lawfully [there, and] had a right to encounter [defendant]," the State still had to prove that defendant knew they were law enforcement officers acting in the performance of their duties while in uniform or exhibiting evidence of their authority. N.J.S.A. 2C:12–1(b)(5)(a); *State v. Green*, 318 N.J.Super. 361, 376 (App.Div.1999), aff'd o.b., 163 N.J. 140 (2000). We find no error in the admission of this testimony.

*Edwards*, 2013 WL 163297, at *4-5.

It is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief. *Estelle*, 502 U.S. at 67–68 ("We have stated many times that federal habeas corpus relief does not lie for errors of state law") (internal citations omitted). Accordingly, Petitioner cannot obtain relief for any errors in state law evidentiary rulings, unless they rise to the level of a deprivation of due process. *Estelle*, 502 U.S. at 70 ("'the Due Process Clause guarantees fundamental elements of fairness in a criminal trial'") (quoting *Spencer v. Texas*, 385 U.S. 554, 563–64 (1967)). For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial. *Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001).

Since Petitioner is challenging the state court's ruling regarding the admission of evidence under state rules, Petitioner must establish that he was deprived of a fundamentally fair trial to obtain habeas relief. He cannot do so. As stated by the Appellate Division, the state's witnesses were specifically instructed not to mention that Petitioner was on parole and on the one occasion where a state witness mentioned that she wanted to talk to Petitioner about a parole issue, the court instructed the jury to disregard the statement. *Edwards*, 2013 WL 163297, at *4-5. Even during that exchange, the state's witnesses specifically did not mention that Petitioner himself was on

11

parole. *Id.*

To the extent Petitioner objects to testimony which indicated that the state's witnesses were parole officers, one of the elements of the crime required that the prosecution prove that Petitioner was aware that he was assaulting law enforcement officers acting in the performance of their duties; that would be difficult, if not impossible, to prove if their testimony did not consist of the now objected-to information. In sum, there is nothing in the record to suggest that the admission of this evidence denied Petitioner his right to a fair trial. The decision of the state court was neither contrary to, nor an unreasonable application of, Supreme Court law and Petitioner is not entitled to relief on this claim.

### 3. Ineffective Assistance of Counsel (Ground Three)[1]

In Ground Three of his Petition, Petitioner states only the following: "INEFFECTIVE ASSISTANCE OF COUNSEL, FAILURE-TO DISCLOSE MATERIAL FACTS OR MISREPRESENTATION OF FACTS," (Am. Pet. ¶ 12, Ground Three) (capitalization in original). In the "Supporting Facts" section, Petitioner states that "COUNSEL, FAILED TO

---

[1] It does not appear that Petitioner raised this claim in any state court proceeding. However, the Court is permitted to deny unexhausted habeas claims on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *see also Carrascosa v. McGuire*, 520 F.3d 249, 255, n. 10 (3d Cir. 2008) ("There is, however, a difference between granting an unexhausted habeas claim on the merits and denying such a claim on the merits, as recognized by the plain language of section 2254(b)(2)....Denying an unexhausted claim on the merits is consistent with the statute"); *Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of Taylor's claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) ("We would permit Bronshtein to attempt on remand to establish a reason to excuse his procedural default, but we find it unnecessary to do so because it is apparent that the claims in question lack merit. Under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here."); *Robinson v. Beard*, 762 F.3d 316, 329, n.4 (3d Cir. 2014) (same).

'OBJECT' TO PROSECUTOR'S [sic] WHEN N.J.R.E. WAS ON PAROLE/PROBATION, TRANSCRIPT, PART-B DATED APRIL 6, 2010." (*Id.*) (capitalization in original). Petitioner then includes citations to various parts of the trial transcript containing the testimony of state witnesses. (*Id.*)

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. *See Strickland*, 466 U.S. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. "[C]ounsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Pinholster*, 131 S.Ct. at 1403 (citing *Strickland*, 466 U.S. at 690). "To overcome that presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances.'" *Id.* (citing *Strickland*, 466 U.S. at 688). A "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. *Id.*

13

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding' . . . Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington*, 131 S.Ct. at 788 (citing *Strickland*, 466 U.S. at 687). As the Supreme Court explained,

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Strickland*, 466 U.S. at 695-96.

The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

Here, at the outset, Petitioner has failed to comply with Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Court. As this Court previously advised him, Rule 2(c) requires that the petition "(1) specify all the grounds for relief available to the petitioner;

14

(2) state the facts supporting each ground; (3) state the relief requested; (4) be printed, typewritten, or legibly handwritten; and (5) be signed under penalty of perjury by the petitioner or by a person authorized to sign it for the petitioner under 28 U.S.C. § 2242." (Nov. 13th Order, ECF No. 2.) However, Ground Three of the Petition does not clearly identify his claim and does not provide any discernible factual support. As such, Ground Three is subject to dismissal on that failure alone.

To the best the Court can identify, it appears that Petitioner is alleging that his counsel was ineffective for failing to object to the alleged violation of the New Jersey Rules of Evidence when testimony about Petitioner's parole status was introduced at trial. Petitioner cannot meet either prong of *Strickland* for that claim. As discussed above, no testimony about Petitioner's parole status was actually introduced at trial. The state witnesses testified about their jobs and their uniforms, but the trial court was very careful not to allow testimony about Petitioner's status. In fact, on the one occasion when a state witness did reference speaking to Petitioner "about an issue that involved the Division of Parole," Petitioner's counsel objected and the court specifically instructed the jury to disregard the statement. (Resp't's Br., Ex. Rta 7, Trial Tr. 21:11-23:4, Apr. 1, 2010, D.E. No. 28-20.) All other references to parole or probation only came about when discussing where the officers were employed and there was no mention of Petitioner's parole status. Certainly, by objecting on the one occasion where a state witness may have implied that Petitioner was on parole, trial counsel's representation did not fall below "an objective standard of reasonableness." Petitioner cannot meet the first prong of *Strickland* and this claim must be denied.[2]

---

[2] The Court notes that even if counsel had failed to object to the one statement from the state's witness that implied Petitioner was on parole, Petitioner has not shown that "there is a reasonable

15

### 4. Grand Jury Indictment (Ground Four)

In the fourth ground of his Petition, Petitioner argues that the "STATE USE OF THE PHRASE 'AND/OR' THROUGHOUT THE INDICTMENT DENIED DEFENDAND [sic] OF CONSTITUTIONAL RIGHTS TO BE ADVISE [sic] OF THE CHARGE AGAINST HIM." (Pet. ¶ 12, Ground Four) (capitalization in original). As his supporting facts for this ground, Petitioner states the following: "TAKE NOTICE, OFFICER EIFE, WAS THE ONLY OFFICE [sic] FOR GETTING [sic] – INDICTMENT THE ENTIRE JURY FOUND HE LIEF, DURING TRIAL, THEREFORE THE ENTIRE, INDICTMENT SHOULD BE DISMISS [sic], SINCE IT WAS BASE [sic] ON OFFICER [sic] LIE, AND MISCONDUCT, OF THE MOST SERIOUSLY [sic] CHARGE." (*Id.*) (capitalization in original). Petitioner raised this claim on direct appeal, where it was rejected by the state court:

> Defendant next argues that the use of "and/or" in the indictment denied his right to be advised of the charges against him, and that the use of the language in the jury instructions relieved the jury of its duty to render a unanimous verdict. Initially, the failure of defendant to raise pretrial an objection on the basis of defects in the indictment constitutes a waiver of that objection. R. 3:10–2(c). Consequently, defendant has waived any objection based on the language in the indictment.
>
> Beyond this procedural bar to an attack upon the indictment, however, defendant's claim has no substantive basis. Defendant can hardly argue that he was unable to ascertain if he were being charged with assault offenses. The indictment clearly set forth the date and

---

probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. There was overwhelming evidence of guilt on the part of Petitioner. Petitioner was convicted of third-degree aggravated assault upon Larry Robinson; third-degree resisting arrest by using or threatening physical force; and third-degree aggravated assault on law enforcement officers Robinson and Murray. All of the officers testified to facts supporting these charges and there was no testimony put forth to contradict their accounts of the events. Certainly, there was more than enough evidence to convict Petitioner of these acts, regardless of whether the jury was aware that he was on parole at the time of the incident.

> place of each offense; the victim of the offense; and the offense charged. The indictment thus was not defective. In *State v. LeFurge*, 101 N.J. 404, 415 (1986), the Court stated:
>
>> First, an indictment must "inform the defendant of the offense charged against him, so that he may adequately prepare his defense...." Second, the indictment must be sufficiently specific to enable the defendant to avoid a subsequent prosecution for the same offense. Finally, the indictment must be sufficiently specific "to preclude the substitution by a trial jury of an offense which the grand jury did not in fact consider or charge."
>>
>> [citations omitted.]
>
> Here, the indictment was specific enough to prevent a subsequent prosecution for the same offense, and defendant does not suggest that the jury could have substituted an offense that the grand jury did not consider or charge.

*Edwards*, 2013 WL 163297, at *5-6.

There is no federal constitutional right to a grand jury in state criminal proceedings, thus defects in a state grand jury process are not reviewable via a federal habeas petition unless they "rise for some other reason to the level of a denial of rights protected by the United States Constitution." *Wainwright v. Goode*, 464 U.S. 78, 86 (1983); *see also Jelinek v. Costello*, 247 F. Supp. 2d 212, 278 (E.D.N.Y. 2003) ("On its face, a state prisoner's claim that he was denied the procedural right to be indicted by a grand jury appears to implicate a right that is exclusively of state concern"). The Sixth Amendment guarantees the right to be informed of the nature and cause of the accusation. The Due Process Clause of the Fourteenth Amendment also requires reasonable notice and information of a specific charge against the accused.

Here, the state court properly found that the grand jury indictment "clearly set forth the date and place of each offense; the victim of the offense; and the offense charged." *Edwards*,

17

2013 WL 163297, at *5-6. Reviewing the language of the indictment, it is without question that Petitioner was, or should have been, aware of the charges pending against him based on that document. The Court finds that the decision of the state court was neither contrary to, nor an unreasonable application of, Supreme Court law and Petitioner is not entitled to relief on this claim.

### III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, no certificate of appealability shall issue.

### IV. CONCLUSION

For the above reasons, the § 2254 habeas petition is denied, and a certificate of appealability will not issue. An appropriate Order follows.

Dated:

Peter G. Sheridan, U.S.D.J.

18